HIRAM RANDALL *vs.* HULDAH DOANE.

The admission, to contradict evidence of the adverse party, of testimony which appears to relate to the same transaction, but is afterwards proved by other evidence to be a different one, is no ground of exception, without showing that the jury were not instructed to disregard it.

In an action by R. against D. for the keeping of a horse, which was defended on the ground that T. was R.'s debtor, the judge instructed the jury that if R.'s servant, with whom the horse was originally left, "understood that the horse was there for T., as T.'s horse and at his charge, and that T. was to pay for the keeping, R. could not recover;" and declined to instruct them that "if D. by himself or his agent left the horse at R.'s stable, R. could recover, unless D. notified him to look to T. for pay, and R. agreed to look to T. for pay." *Held*, that R. had no ground of exception.

ACTION OF CONTRACT for the keeping of a horse.    At the trial in the court of common pleas before *Sanger*, J., it appeared that the horse was brought to the plaintiff's stable in his absence,

and left with his hostler; and there was conflicting evidence whether the hostler was told that the horse was the defendant's or that it was George W. Turner's.

The plaintiff called Turner as a witness, who testified that he had several conversations with the defendant in regard to the horse, and that the last conversation, which led to the horse's being sent to the plaintiff's stable, was at the defendant's house in South Braintree, and was, in substance, " that he told the defendant that he would have a better chance, and would do his best to sell the horse if it was kept nearer to him; that the defendant asked him if there was any place there where he could get the horse kept, and he said she could at Randall's, and she gave him to understand that she should send the horse there, if she did not sell him shortly."

The defendant called Sabrina Willis, who testified, the plaintiff objecting, that she was present at the above conversation between Turner and the defendant, and that the conversation was, in substance, that Turner asked where the horse was, and was told; that he then said he had no horse of his own, and should like to have this horse; that he would take and keep it free of any expense to the defendant, and that he would use the horse enough to pay for its keeping, and would do his best to sell it.

The defendant testified that the last conversation with Turner previously to the horse's going to the plaintiff's stable, was not at South Braintree, as Turner testified, but was at North Abington, where she and one Higgins went to see Turner; and she and Higgins both testified, the plaintiff objecting, as to the conversation at North Abington, and that it was in substance " that Turner asked to have the horse for his work, and that if she permitted him to have the horse, it should cost her nothing for his keeping; that Turner wished the horse sent to him; that he expected to be absent for a day or two, and that if the horse came in his absence, he would leave some one to take charge of him."

The several witnesses for the defendant testified that at this time they did not know of the existence of such a man as the

plaintiff, nor did they know of him till a long time after, when Turner had become insolvent.

The judge instructed the jury, " that the burden of proof was on the plaintiff, to satisfy them that the keeping of the horse was rightly chargeable to the defendant; that if the defendant herself brought the horse to the plaintiff's stable and left it there to be kept, whether she knew that the plaintiff was the particular person keeping the stable or not, she would be liable therefor that if the horse was taken to the plaintiff's stable and left there to be kept by an agent of the defendant authorized so to do, the defendant would be liable therefor; that if the horse was taken to the plaintiff's stable by a servant of the defendant, who at the time had the horse in charge, but had no authority to take or leave the horse at the plaintiff's stable, to be there kept at the defendant's expense, and was left there by the servant, if the defendant knew that the horse was there, and so kept and permitted the horse to remain there, she would be liable ; but if at the time the horse was taken to the plaintiff's stable, the plaintiff's servant understood that the horse was there for Turner, as Turner's horse and at his charge, and that Turner was to pay for the keeping, the defendant would not be liable therefor."

After the judge had finished the instructions to the jury, the plaintiff asked him to instruct the jury, that " if the defendant, by herself or agent, left the horse at the plaintiff's stable, unless the defendant notified the plaintiff to look to Turner for pay and the plaintiff agreed to look to Turner for pay, they must find for the plaintiff; and the burden is on the defendant to prove this notification." But the judge declined to give any further instructions to the jury. The jury found for the defendant, and the plaintiff alleged exceptions.

*P. Simmons*, for the plaintiff.

*E. Ames*, for the defendant.

BY THE COURT. The testimony of Willis, offered to contradict Turner, was competent at the time it was admitted. As the case then stood, the plaintiff relied on the testimony of Turner to establish his claim. If the defendant's testimony subsequently showed that the conversation to which Willis

testified was not the same to which Turner's evidence related, or otherwise showed it to be immaterial, it was for the court to instruct the jury not to regard it. *Wilder* v. *Holden*, 24 Pick. 12. As it does not appear that such instructions were not given, the plaintiff fails to show that he was aggrieved by the rulings of the court.

The instructions bearing on the merits of the case seem to have been correct, and adapted to the facts in proof.

*Exceptions overruled.*